IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HELENA DUPONT WRIGHT, JAMES MILLS, JOSEPH WRIGHT, and T. KIMBERLY WILLIAMS,<br><br>    Plaintiffs/Counter-defendants,<br><br>vs.<br><br>ELTON CORPORATION, GREGORY FIELDS, FIRST REPUBLIC TRUST COMPANY OF DELAWARE LLC, and M.C. DUPONT CLARK EMPLOYEES PENSION TRUST,<br><br>    Defendants/Counter-claimants/Third-party Plaintiffs,<br><br>vs.<br><br>JAMES B. WYETH, Solely as Executor and Personal Representative of the Estate of Phyllis M. Wyeth, MARY MILLS ABEL SMITH, CHRISTOPHER T. DUPONT, and MICHAEL DUPONT,<br><br>    Third-party defendants. | C.A. NO. 17-286-JFB<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the parties' cross-motions for summary judgment on Count I of the plaintiffs' second amended complaint (D.I. 120 and D.I. 124).[1] This is an action for declaratory and injunctive relief involving an employee benefit trust, allegedly

---

[1] Count I seeks a determination of the applicability of ERISA to the trust at issue and Count II requests injunctive and other equitable relief, including determinations in the nature of an accounting—the identities of eligible present and future plan participants and their employers and calculations and amounts of benefits.

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. In this action, the plaintiffs seek (1) a declaratory judgment that the trust at issue is an ERISA Pension Plan subject to federal law and (2) an injunction ordering defendants to bring the plan into compliance with ERISA. The action has been bifurcated for a determination of the threshold issue of whether or not the trust at issue is governed by ERISA. *See* oral order dated June 14, 2017.

In their cross-motions for summary judgment, plaintiffs seek an order that the trust at issue is an ERISA-governed plan and defendants' and third-party defendants (hereinafter, collectively, "defendants") jointly move for a declaration that the trust at issue is not subject to ERISA.[2]

I. BACKGROUND

    A. Procedural History

This action for declaratory and equitable relief under 29 U.S.C. § § 1132(a)(3) was originally commenced by plaintiffs Helena duPont Wright and James Mills against Elton Corporation ("Elton Corp.") and Gregory Fields, alleged fiduciaries of the Mary Chichester duPont Clark Employee Pension Trust ("the Trust") (D.I. 1). The plaintiffs each employed domestic employees who are allegedly entitled to benefits under the Trust (D.I. 35).

In their complaint, the plaintiffs sought a determination that the Trust is governed by ERISA and an order requiring the defendants to comply with the statute. Plaintiffs Wright and Mills are the grandchildren of Mary Chichester duPont, the settlor of the Trust

---

[2] The plaintiffs also move for a determination of the status of the defendants as fiduciaries under ERISA and they also contend there is no dispute that plaintiffs Kimberly Williams and Joseph Wright are plan participants. These determinations are outside the scope of the bifurcation and will not be addressed at this time.

2

at issue. The defendants moved to dismiss for lack of subject matter jurisdiction, lack of statutory standing under ERISA, and improper venue. Thereafter, the plaintiffs filed an amended complaint, adding the Mary Chichester DuPont Clark Employee Pension Trust (the "Trust") and First Republic Trust Company of Delaware LLC, the current trustee of the Trust, (hereinafter, collectively, "First Republic") as party defendants (D.I. 8). First Republic moved to dismiss (D.I. 37) and also filed a counterclaim against the plaintiffs and a third-party complaint against third-party defendants Mary Mills Abel Smith, Christopher T. duPont, Michael duPont, Phyllis M. Wyeth, and Katharine D. Gahagan, who are also grandchildren of Mary Chichester duPont Clark.[3] D.I. 61. The plaintiffs thereafter filed a second amended complaint, adding T. Kimberly Williams and Joseph Wright, alleged to be employees covered by the Trust, as parties plaintiff. Defendants again moved to dismiss on substantially similar grounds. The District Court of Maryland granted the motion to dismiss on grounds of improper venue and transferred the case to this Court (D.I. 45). Resolution of other issues has been deferred pending resolution of the cross-motions for summary judgment on the ERISA coverage issue.

B.   Facts

The record shows that Mary Chichester DuPont created the Mary Chichester DuPont Clark Employee Pension Trust (the "Trust") on September 11, 1947. The Trust

---

[3] First Republic states that its third-party complaint is a "protective filing." D.I. 127, Brief at 3 n. 3. It argues the Trust is not governed by ERISA, but, if ERISA is found to apply, it seeks a declaration that each of the third-party defendants are separately liable to the Trust as employers under ERISA in such manner and amount as is mandated and/or required under ERISA. *Id.* That determination is similarly beyond the scope of the limited issue presently before the Court.

Also, on a suggestion of death (D.I. 130), James B. Wyeth, as Executor and Personal Representative of the Estate of Phyllis M. Wyeth, has been substituted for third-party defendant Phyllis M. Wyeth (D.I. 131).

3

was initially funded with 50 shares of the common stock of Christiana Securities Company. D.I. 125-1, Ex. 1, Affidavit of Katherine Gahagan ("Gahagan Aff.") at 1. The Trust provides that every qualified beneficiary "shall be entitled to an annual pension for the life of such Pensioner or during the continuance of this trust whichever is shorter, at the rate of sixty percent (60%) of the annual money wages or salary at which such Pensioner was employed . . . ." D.I. 125-1, Gahagan Aff., Exhibit (Ex.) A, Trust Instrument. The Trust defines its beneficiaries as

> any domestic employee or any employee rendering secretarial, accounting, or other assistance in the management of his employer's private, financial, and social affairs who may be employed by any one or more of Mary Chichester DuPont, A. Felix DuPont, Jr., Lydia C. DuPont, Alice DuPont Mills, Allaire Crosier DuPont and/or any grandchild of the Trustor.

*Id.* at 2, ¶ 1.

The Trust uses the term "Qualified Employer" to refer to family members whose employees are entitled to pensions under the Trust. *Id.* The Trust is managed and controlled by its trustee or trustees. D.I. 125-1, Ex. 1 Gahagen Aff. at 2. The initial trustees of the Trust were Lydia C. duPont, A. Felix duPont, Jr. and Alice duPont Mills. *Id.* In 1958, Lydia C. duPont died and Allaire C. duPont was appointed as a trustee. *Id.* In 1989, trustees Alice duPont Mills and Allaire C. duPont resigned. *Id.*; Ex. C. Thereafter, A. Felix duPont, Jr., then the sole trustee, appointed Elton Corp. as co-trustee of the Trust. *Id.* at 3; Ex. D. A. Felix DuPont, Jr. died on December 30,1996 leaving Elton Corp. as the sole trustee. *Id.* Effective on August 7, 2015, Elton Corp. resigned as a trustee of the Trust and appointed First Republic as successor trustee. *Id.*

Elton Corp. is a corporation established by A. Felix duPont, to administer various DuPont family trusts, including the Trust at issue. D.I. 122, Ex. B, Deposition of Katharine

4

Gahagen ("Gahagen Dep.") at 14. As trustee, Elton Corp. determined whether an employee of a DuPont family member was entitled to a pension under the terms of the Trust. *Id.* at 15. It determined whether such employee: (1) had reached the age of 65; (2) had been working for an applicable DuPont family member for ten years, and (3) was still working for such family member at the time he or she turned 65. *Id.* A. Felix duPont, and later his daughter, Katharine Gahagen, served as the President of Elton Corp. At the time he took over as sole trustee, A. Felix duPont stated that his plans were "to establish a pension plan for [his] employees and to appoint a successor trustee for the Trust." [D.I. 125-1](), Ex. C.

> The Trust provides that the trustee's duties are:
>
> To hold, manage, invest and reinvest the same, to collect the income arising therefrom, to pay out of such income all charges and expenses, properly payable thereout, including reasonable compensation to my said Trustees, and to pay over from income or principal in the manner and amounts at the times hereinafter set forth unto the Pensioner or Pensioners as hereinafter defined annual pensions so long as any funds remain in the hands of my said Trustees, and to accumulate any income not so paid out and add the same to the corpus of this trust, for and during the term of this trust.

[D.I. 125-1](), Gahagen Aff. at 3.

The Trust specifically provides that payments under the Trust to eligible beneficiaries would continue until the earliest of (1) twenty years after the death of the last surviving grandchild who was living at the time the trust was executed or (2) until the entire corpus of the trust and all additions thereto and all income accrued thereon were exhausted. *Id.* Further, upon that occurrence, the rights of any Pensioner or other beneficiary under the Trust to the income or corpus of the trust would cease. *Id.* at 3.

Also, if the Trust were to terminate while still holding funds, the corpus and income were to be distributed to charitable corporations. (*Id.* at 4).

Plaintiffs Joseph Wright and T. Kimberly Williams ("employee plaintiffs") are currently employed by James Mills and Helena duPont Wright ("employer plaintiffs") as a personal assistant and a personal accountant, respectively. D.I. 35, second amended complaint at 12. The record shows that both employee plaintiffs provide the type of personal services that the Trust states would entitle them to a pension, and both have been employed for at least the ten years that the Trust's terms state are required to trigger a pension. D.I. 122-10, Ex. J, Deposition of Trudie Kimberly Williams at 6, 13, 28; D.I. 122-11, Ex. K, Deposition of Joseph Wright at 4.

While Katherine Gahagen was President of Elton Corp. and Elton Corp. was trustee of the Trust, she delegated the responsibility of administering the Trust, including managing investments, making eligibility decisions, determining the amount of benefit payments, paying benefits, and denying claims for benefits to defendant Gregory Fields. D.I. 125-1, Ex. 7, Gahagen Dep. at 8-9). Gahagen signed off on everything Fields did. *Id.*; *see* D.I. 122-4, Ex. D, Deposition of Gregory Fields.

At least thirteen former employees have been approved for pensions under the Trust by the Defendants and are currently receiving pensions. D.I. 122-2, Ex. B, Gahagan Dep. at 42, 44. Eight other employees who are projected to begin receiving pensions under the Trust in 2018 or later. D.I. 122-3, Exhibit C; D.I. 122-5, Ex. E.

The evidence establishes that third-party defendants Christopher T. duPont and Michael H. duPont have not employed domestic employees and currently have no domestic employees. D.I. 125-1, Ex. 2, Affidavit of Christopher T. duPont; Ex. 4, Affidavit

6

of Michael H. duPont. Third-party defendants Phyllis Wyeth, Mary Mills Abel-Smith and Katherine Gahagen state via affidavit that they have employed, or currently employ, domestic employees who perform household services. D.I. 125-1, Ex. 3, Ex. 5, Ex. 6

II.  LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 415 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce." 29 U.S.C. § 1003(a); *see Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 290 (3d Cir. 2014). ERISA defines the terms "employee pension benefit plan" and "pension plan" to mean

> any plan, fund, or program which *was heretofore or is hereafter established or maintained by an employer* or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i) provides retirement income to employees[.]

29 U.S.C. § 1002(2)(A) (emphasis added). Thus, ERISA is retroactive in its application to pension plans established prior to its enactment and will govern a plan, assuming the other ERISA prerequisites are met. *Smith v. Belk, Inc.*, No. 3:13-CV-332-TAV-CCS, 2013 WL 6181455, at *5 (E.D. Tenn. Nov. 26, 2013). ERISA applies to plans already in existence at the time of its enactment. *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 398–99 (3d Cir. 1992) (noting that the

question of a plan's enforceability prior to ERISA and the question of a plan's existence are different questions). "Indeed, ERISA was enacted to afford protections to participants of already existing plans." *Id.* However, acts or omissions that occurred prior to the effective date of ERISA are not controlled by the provisions of the Act. *Reuther v. Trs. of the Trucking Emps. of Passaic and Bergan Cty. Welfare Fund*, 575 F.2d 1074, 1078 (3d Cir.1978); *see also United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 572 F. Supp. 1494, 1501–02 (N.D. Ill. 1983), *aff'd*, 756 F.2d 1274 (7th Cir. 1985). ERISA's non-retroactivity provision, 29 U.S.C. § 1144(b)(1), precludes a plaintiff from imposing ERISA's substantive requirements on a corporation's acts or omissions that occurred before ERISA's effective date of January 1, 1975. *Kuhns v. Meridian Bancorp, Inc.*, No. CIV. A. 92-4065, 1993 WL 34786, at *8 (E.D. Pa. Feb. 8, 1993), *aff'd in part, rev'd in part*, 68 F.3d 456 (3d Cir. 1995).

> ERISA generally applies to
>
> Any employee benefit plan if it is established or maintained—
>
> > (1) by an employer engaged in commerce or in any industry or activity affecting commerce, or
> >
> > (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce, or
> >
> > (3) both.

29 U.S.C. § 1003(a)(1)-(3) (referring to the statute's coverage). Congress's Commerce Clause power extends to activities that individually do not affect interstate commerce but are part of a "class of activities" that does. *Gonzales v. Raich*, 545 U.S. 1, 23 (2005). "[W]hen 'a general regulatory statute bears a substantial relation to commerce, the *de*

*minimis* character of individual instances arising under that statute is of no consequence.'" *Id.* at 17 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 196 n. 27 (1968)). "ERISA takes advantage of this power, regulating employers insofar as they are participants in an 'industry or activity affecting commerce.'" *Carter v. Guardian Life Ins. Co. of Am.*, No. CIV. 11-3-ART, 2011 WL 1884625, at *4 (E.D. Ky. May 18, 2011); *see also Howell Chevrolet Co. v. Nat'l Labor Relations Bd.*, 346 U.S. 482, 484 (1953) (holding that a car retailer is subject to Commerce Clause as an "'integral part' of General Motors' national system of distribution."); *Reber v. Provident Life & Accident Ins. Co.*, 93 F. Supp. 2d 995, 1009 (S.D. Ind. 2000) ("There can be no doubt that the practice of law in the aggregate significantly affects commerce."); *Davis v. Reliance Standard Life Ins. Co.*, No. 3-03-CV-2535-BD, 2004 WL 1619958, at *4 (N.D. Tex. July 19, 2004) (purchase of an insurance policy from an out-of-state company is a sufficient nexus to interstate commerce for ERISA purposes).

"An ERISA plan 'is established if from the surrounding circumstances a reasonable person can ascertain (1) the intended benefits, (2) a class of beneficiaries, (3) the source of financing, and (4) procedures for receiving benefits.'" *Menkes*, 762 F.3d at 290 (quoting *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012)). "The 'crucial factor' in determining whether a 'plan' has been established is 'whether the employer has expressed an intention to provide benefits on a regular and long-term basis.'" *Id.* (quoting *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998)); *see also Giradot v. Chemours Co.*, 731 F. App'x 108, 111 (3d Cir. 2018). ERISA provides that the term "employer" means "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or

10

association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). "ERISA defines a 'participant' as an employee who is eligible to receive a benefit from an employee benefit plan." *Spillane v. AXA Fin., Inc.*, 648 F. Supp. 2d 690, 697 (E.D. Pa. 2009); *see* 29 U.S.C. § 1002(7). "A 'beneficiary' is one who is designated by the terms of an employee benefit plan, who may become entitled to a benefit thereunder." *Id.*; *see* 29 U.S.C. § 1002(8).

The Third Circuit follows the standard developed by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (*en banc*), "to determine whether informal written or oral communications . . . constitute a plan." *Woerner v. Fram Grp. Operations, LLC*, 658 F. App'x 90, 95 (3d Cir. 2016); *see Shaver,* 670 F.3d at 475. Whether a plan exists within the meaning of ERISA is "a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Deibler v. United Food & Commercial Workers' Local Union,* 973 F.2d 206, 209 (3d Cir. 1992) (quoting *Wickman v. Nw. Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir. 1990)). An ERISA plan "is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Shaver,* 670 F.3d at 475 (quoting *Donovan*, 688 F.2d at 1373). This standard is not stringent, and an employer can establish an ERISA plan rather easily. *Woerner*, 658 F. App'x at 95.

"One of the touchstones of a plan that is governed by ERISA is the 'establishment and maintenance of a separate and ongoing administrative scheme,' which the plan administrator must set up in order to determine eligibility for benefits." *Menkes*, 762 F.3d at 290 (quoting *Shaver*, 670 F.3d at 476). Indeed, "ERISA preemption was designed 'to

afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations,' in situations where there exists an 'ongoing administrative program to meet the employer's obligation.'" *Id.* "An administrative scheme 'may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the [policy's] criteria.'" *Id.* at 290-91 (quoting *Shaver*, 670 F.3d at 477). "The disjunctive nature of the 'established or maintained' language appearing in the statute suggests that a showing of either one is sufficient to give rise to ERISA's application." *Id.* (quoting *Cowart v. Metro. Life Ins. Co.*, 444 F. Supp. 2d 1282, 1293 (M.D. Ga. 2006)). "Courts should focus on the employer and its involvement with the administration of the plan." *Spillane,* 648 F. Supp. 2d at 698.

III. DISCUSSION

As an initial matter, the Court has no trouble finding that the interstate commerce nexus is met in this action. First, the Trust and its trustees are involved in overseeing investments and managing a portfolio of securities and other assets. That activity is conducted across state lines and through national markets for securities—and alone provides the requisite nexus to interstate commerce. Further, the plan participants—both employers and employees—are residents of different states and the Trust directs payment to beneficiaries in multiple states. Clearly, the activities of the Trust affect interstate commerce. The plaintiffs have established a more than minimal connection to interstate commerce, which satisfies ERISA's jurisdictional requirement.

The defendants do not dispute that the Trust is a plan as defined in ERISA, but they contend it is nonetheless not covered by ERISA. The Court, after conducting an objective inquiry into the Trust and surrounding facts, finds the Trust qualifies as an

ERISA plan that is governed by ERISA. The Court can easily ascertain the intended benefits and procedures for receiving benefits from the terms of the Trust itself. The Trust describes the benefits and eligibility requirements in detail. Thirteen employees have received or are receiving benefits under the Trust. Given the evidence, a reasonable person would conclude that there is a class of beneficiaries—the DuPont family's former, present, and future domestic or household employees. Moreover, a reasonable person could ascertain the source of funding for the plan. The initial contribution is set out in an addendum to the Trust, and evidence shows appreciation and income from investments also fund the Trust. The Trust was initially funded with stock shares and by other investments thereafter. The facts show that establishing the Trust was not a single, aberrational occurrence but reflects a calculated commitment to provide pension benefits to qualified former, present and future employees on a regular and long-term basis from 1947 to the present day. The Trust expressly provides a framework for administration of the Trust. The circumstances surrounding the Trust clearly demonstrate an intent to provide such pensions on a long-term basis.

It is clear that members of the duPont family established, maintained, and ratified the Trust over the years. The evidence is sufficient to demonstrate that present and former trustees actively managed the Trust for the benefit of the duPont family members' domestic employees. Thus, the Court finds that the "established or maintained" element is satisfied. The evidence shows a there is a documented history of a multi-decade effort to provide pension benefits to the family's long-term domestic employees. The employers, defined in the Trust and either expressly named (with respect to the Settlor's children) or identified by their lineage (with respect to the grandchildren), and

administrators have provided pensions under the Trust to their domestic employees for over seventy years.

An intention to provide benefits on a regular and long-term basis is evidenced by the DuPont heirs' continued involvement in or acquiescence to the Trust which is shown in meeting minutes and correspondence. Evidence that other employees are in line for benefits also supports this conclusion. There is also sufficient evidence to support the finding that the Trust was established or maintained "for the purpose of providing benefits." See *Spillane*, 648 F. Supp. 2d at 698. The purpose of the Trust is set out in the instrument itself. Finally, it is sufficiently clear that the employee plaintiffs are both participants and beneficiaries under the plan.

After considering "all the surrounding facts and circumstances from the point of view of a reasonable person," *Deibler*, 973 F.2d at 209–210, the Court concludes that the Trust at issue as an ERISA plan and is covered by ERISA. Accordingly,

IT IS ORDERED that

1. Plaintiffs' motion for summary judgment (D.I. 120) is granted.

2. Defendants' and Third-party defendants' motion for summary judgment (D.I. 124) is denied.

Dated this 31st day of May, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge